Devin Burstein, Federal Defender, on behalf of Mr. Muniz. Your Honor, I'll try and save two minutes for rebuttal. The dispatch recordings made at the time of Mr. Muniz's arrest in this case were material to preparing his defense. Because the recordings were material to preparing his defense, the District Court abused its discretion in failing to order... Help me on something on materiality. Yes, Your Honor. I understood the positive materiality arguments could have helped the defense in the briefs. It occurred to me from when I used to use criminal defense that one of the things I really liked to see when I was doing my preparation was that my guy was just as guilty as could be and no ifs, ands, and buts, and it was time to plead out and get whatever we could for pleading. Do you happen to know, is there any authority that interprets materiality for preparation of the defense that way in Rule 16? There is indeed, Your Honor, and we made that point as well in our briefs, in both the opening and reply, and Doe just held exactly that, Your Honor. Doe just said that even if it would have just led to abandoning the defense, and I'll give you the quote, even if the documents there caused the defendant to completely abandon the entrapment defense and take an entirely different path, the documents would still have been material to preparing the defense, and that was one of the three reasons the documents were material that we cited in our briefs, or not the documents in this case, but the recordings, were that they could have shown, okay, let's not even pursue this official restraint defense. In addition, as we cited in our briefs, the history on Rule 16 shows that the purpose of a broad discovery right, and I think this is exactly what Your Honor was getting to, is to allow the defendant to make an informed decision as to his plea, and certainly documents that would show you are certainly guilty, in Your Honor's words, would help in that sense. So they are material to preparing the defense, and that's really the key language in Rule 16, and it's helpful, document the information discovery needs to be helpful, but not in the Brady sense that is helpful to making you win. Okay, so what would you have us do? You want us to, what, remand it for an evidentiary hearing for the judge to look at these tapes? Well, Your Honor, we would like the exact same remedy as Budziak and Doe, and in those cases you sent the, this court, excuse me, this court sent the case back to the trial court. We would ask that you allow us to order production and with an evidentiary hearing so that just as in Budziak and just as in Doe, we can make the decision. Evidentiary hearing aimed at what? Perhaps evidentiary hearing would not be necessarily the right terminology. What we would ask for specifically is a limited remand with an order of production such that the defense counsel can listen to the tapes, make a judgment in our informed judgment as to whether there is in fact Brady material or other material that could justify a new trial, and then allow us to make the appropriate motions once we've had all these. Suppose they turn over the tape. This was tried to the judge, right? Correct. This was tried to the court. The judge looks at the tape, listens to the tape, reads the transcript and says, I'm the trier of fact. It wouldn't change my mind. Is that the end of the road then? All you want is an opportunity to look at the tape and let the judge decide whether it would cause him to change his mind? We would ask for, just as in Budziak and Doe, an opportunity to review the discovery, and then in those two cases, this court said it vacated with a limited remand saying, the conviction is vacated, but, judge, you can reinstate the judgment if it turns out there's nothing there. For example, in Doe, this court didn't even know if the requested discovery existed at all. Doe was the case where they wanted FBI. The prosecutor sent you a note, sent you an email, I guess, right? Correct. It said, I've listened to the tape. This is what's on it. The prosecutor sent trial counsel an email saying, I've listened to an excerpt of the tape. This is what I've seen. This is what I heard. Trial counsel, defense counsel immediately responded with several questions about that, saying, I think this is even braiding material because there was a discrepancy between what Agent Woodford testified to and what the prosecutor said was on the tape in terms of the number of aliens. Then the prosecutor, he asked several questions, and it was radio silence. A month later or two months later, forgive me if the timing is not exactly right, defense counsel responded again prior to sentencing, said, you haven't answered my questions. I mean, these four are in the motion for judicial notice, which this court granted. Please let me know the answer. Defense, the prosecutor responded, I think you had it backwards. I didn't hear a second call. Well, that's fine. The point of my question was, the prosecutor told you what's on the tape, and I gather your position is that's not satisfactory. You have the right to the tape itself. Is that it? The prosecutor, yes. Yes, but. The prosecutor told us what she heard on an excerpt of the tape, and Budziak makes this exact point clear. In Budziak, they held that we don't have to doubt the good faith of the prosecutor, but defense counsel doesn't have to rely on the prosecutor's view or the court's view of the tape. Defense counsel, this is an adversarial system, so defense counsel should get to make that decision. And in all candor, my view of what may justify a new trial is, I hope, highly different than what the prosecutor may view as material or. I just have one other question. When I looked at the exchanges of the e-mails, the prosecutor sent you, is it her rendition of what was on the tape? Yes, Your Honor. Did you write back and say, I want the tape? We wrote back with specific questions about the tape. Right. My question to you is, did you say, I don't want your paraphrase of the tape, I want the tape? Well, not at that time, because the trial court had already ruled we couldn't have the tape. That was the point. It's the discovery, initial discovery request that triggers the government's obligation under Rule 16. We made the request. We made it again at trial. We were ruled against by the district court. That ruling was an error. But we're not going to try and circumvent the district court's ruling after the fact. This is why we take the appeal. Was the day of the trial the first day that the trial judge heard about the request for the tape? Yes, because ---- Well, how can we say he was abusing his discretion if he gets this ambush motion the day of the trial? Your Honor, I don't think that's a fair characterization of the record. This is not about the trial court. We made a request to the government. The government must honor that request under Rule 16. The government suggested to us it is ---- So your quarrel is with the prosecutor and not you're not saying the judge abused his discretion. We are saying that because the prosecutor believed that the tapes were destroyed. It wasn't until she checked that she first said that the tapes existed. We couldn't bring something to the district court prior to knowing that the tapes existed. So once we knew the tapes existed, we made a motion. It's a Rule 16 standard. And the district court is ---- can understand just as well as Your Honors and myself why it would be material. When did your ---- when did your counsel first find out the tapings actually existed? Mid-witness. Mid-what? Mid-witness. Mid-witness. After the trial was underway. During the direct ---- during the cross-examination of Agent Woodford. Prior to that, we assumed, based on the government's response that these are usually destroyed, that they were in fact destroyed. Well, that's why it wasn't a concern that she said, these are usually destroyed promptly. You can't listen ---- you can't come over and listen to anything we find until two weeks before trial? Right. That's our experience as well, is that they've ---- we rely on the government for discovery. I mean, that's the nature of our system. If the government informs us that tapes are destroyed, we take them at their good word. I mean, we have a ---- you know, Federal Defenders and the government, we have these cases all the time. Once we inquire at trial, if they exist, we ask for them because they are certainly material to preparing our defense. What do you do at that point if it's the bad kind of tape that I described? You can't get your two points or your three points for your early plea anymore. That's true, Your Honor, but perhaps we would change course or perhaps we would try and come to a resolution with the government at that point. This was a bench trial, so if ---- One thing that occurred to me was the discrepancy between five and six. Number six could be a snitch, and that could be a reason not to let you hear the tapes. But I guess that never came up, right? Well, we do. We say there are only five ---- I'm going to read directly. There are only five listed in the arrest report, and he testified to a group of four men and one woman. What happened to body number six? Was he a foot guide? Was he cooperating? And so diverted or omitted from the report. I think that that discrepancy alone is Brady for the impeachment potential regarding his memory of the events at the very least. This ---- Finish your sentence, and then we'll turn it over to your colleague. Thank you, Your Honor. I was just going to respond that this is the essence of the low threshold for materiality under Rule 16. Thank you. Thank you. Good morning. Good morning, Your Honor. My name is Claire Perez for Appelli United States. I believe the Court's going to have a number of questions for me, but let me just start off by saying that the way that the tape became noticed to the government that it was still in existence was very unusual. That was not the typical process or procedure by which we find out that these dispatch tapes exist. I ---- you have not been accused. The prosecution has not been accused of any bad faith. Well, I'm happy to hear that, and we have a good relationship with opposing counsel, and I hope that we continue to do that. But the ---- Let me ask you about something. It was obvious reading the transcript that the judge was disturbed that the first time there's any kind of motion practice is in the middle of trial, which is a little late to change course or delay or interrupt or anything. It can be even worse with a jury, but it's bad enough with a bench trial. It looked to me as though the reason for that was that the defendant really had been told that the tapes did not exist, so there was just no reason to do anything but trust the prosecutor on that. And it wasn't the judge's fault. It wasn't the defense lawyer's fault. In a way, it could have been the government's fault for not inquiring of its agents to find out whether the tapes existed. Is that right? Yes, Your Honor. I mean, I will tell you this. It is not clear from the record what exactly happened when the first defense request for those tapes came to the government. There were a number of prosecutors that were assigned to this case and had their hands on this case, and as I'm sure the Court is aware, there is a highly stovepiped, procedural, efficient method by which the Southern District of California handles a high volume of immigration cases. We don't know the details, or at least not all of us do. We don't get a high volume of people sneaking into Alaska. Your Honor, there are a high volume that come into California, and so we have developed a very mechanized approach and system for handling these cases. And we try to do that. So you don't have the prosecutor who's really responsible until two weeks before trial? No, that's not typically the case, Your Honor. In this particular instance, I took the case over two weeks before trial. As a supervisor, not having done one of these in a while, I wanted to take over the case. So I inherited it after, you can see from the docket, there are at least three other attorneys that are on the record there. It would have been our grand jury assistant that would have received the letter that was originally issued by the defense attorneys, as well as the motion. And I think what I can explain to the Court is that the response, the standard response from the government is, thank you for, I don't think there was a response to the letter. The letter came within five days of the arrest. The tape should have, by all accounts, no matter which sector, Border Patrol sector, this arrest took place in, there should have been a tape that existed. The United States should have moved at that point to preserve that tape, should have communicated with the agency. I don't have, there is nothing on the record, there is nothing that I put on the record, nor do I know now, that indicates what happened at that point. If you knew of the tape, if you had noted the tape early on, would you have disclosed it to the defense counsel? Yes, Your Honor. We do. As a matter of course, when they ask for it, if the tapes have not been destroyed, the United States will turn them over. Why not give it to them now? So that is the $64,000 question for me as I'm standing here. I could have saved everybody a lot of time and pain if at that point I had just said, Your Honor, the government's position is fine. Let's just stop and we'll turn them over. There's still a legal requirement, a legal threshold that the defense has to meet with respect to these tapes. We were in the middle of a trial. It looks to me like the legal threshold, tell me if I'm wrong, is materiality, which is really different from exculpatory or impeaching, the Brady standard. And materiality means has any bearing, basically, on how the defense will prepare. I think the word preparation is used in the rule. And usually the preparation is figuring out whether to go to trial, and if so, how. Most cases don't go to trial. They plead out. And that's the big part of prep is deciding whether to plead it out. Your Honor, it was a Rule 16 standard for materiality, not the Brady rule for materiality. It is a lower threshold under Rule 16, but it's not a nonexistent threshold where any time the defense says that we think this is materiality. I mean, what the agents said as they were watching, that's about as material as it can be. It's not like asking for all the tapes the agents made that day or all the agents, all the tapes made that week that are mostly just other cases. Your Honor, let me ask you to consider a couple other cases that address materiality under the Rule 16 standard. And I'll show you that it's not as clear-cut as that. One of the cases, a Second Circuit case cited in the briefs regarding terrorist bombings where they talk about, you know, it's a case-by-case analysis. There has to still be some logical relationship between the evidence being sought and the issues in the case. And there has to be a whole lot more careful with terrorist bombing to avoid forcing disclosure of information that's going to interfere with catching the next terrorist. But here, you made the remark earlier that if you'd known the tapes existed, they would have been produced right away. Nothing like that here. And that is true. And I stand by that. I mean, this is an example not of a judge or of the government that was, that are true believers and don't believe these should ever be turned over. But in essence, in the middle of trial, when it first became disclosed to both the government and to the defense that, in fact, this tape existed, we were down a path of establishing that they weren't material at that point or putting the burden on the defense, as required by the law, to establish materiality. And, Your Honor, although it's a low standard, they just did not need it in the eyes of the judge. But you then listened to the tape. I did, Your Honor. And you send them an e-mail saying this is what's on it. I did because the court said, you know, there is something else I'd like to raise. I just want to ask you, I mean, does he have to take your word for it? Is he entitled to listen to it? He could have asked the judge at that point. The judge said, government, listen to the tape. If there's anything on there, anything that's contradictory. All he has to do is ask you. Turn it over. Under the rule. But I was complying with the court's order at that point. He had asked me, and the judge ruled on that motion, and the judge denied that motion. So at this point, after asking the judge, we even offered to the judge, take it in camera, Your Honor. We'll listen to the parts. We'll turn it over to the court. You take it in camera, Your Honor. I had mentioned it twice to the court, and the defense had mentioned it. And the judge was not interested. And this is the point that I want to get to. How could it not be material? If you're trying a case about an event months or a year, year and a half later, and you've got a recorded observation, not even a recollection, here is what I see. And the person who is likely to be testifying about the event, and in any case observe the event, taped, here is what I am looking at, here is what I see. How could that not be material? Well, first of all, we didn't know exactly what the contents of the tape were to begin with. But second of all, because of the issues of this case, when you read the excerpts of record, you'll get a sense of how flabbergasted both the court and the government were in raising this particular issue. They tried to connect it and link it to the issue for them, which was official restraint. There was absolutely nothing in the record. I mean, the witness had testified, had been directed, cross-examined, directed, we argued at length. Well, you'd really want to see, did the agent see him climbing over the fence and see him continuously since? That would be a pachinko defense. Your Honor, they didn't even ask the defense. The witness was on the stand. They had the opportunity to even directly ask him those questions. Why do you want to ask a question? I learned it at my father's knee. Never ask a question you don't know the answer to and cross. Well, to suggest that there was an issue as to official restraint when it was not the defense was unable to raise that issue during the testimony of this particular defendant. Let me ask you, suppose we assume, disagree with you that it was not material. Suppose we say it was material. Yes, Your Honor. And I guess you must have thought so, too, or you wouldn't have offered to turn it over initially if you had it. But let's assume we say it's material. What should we do? Well, in this particular case, find that there's no prejudice. How can we do that? You can do that because unlike the cases that have been cited by the defense in Doe and Budziak, the court has the information before it. How do we know that? I mean, that's just your say-so? What's on the tape? Well, there's an hour and a half worth of tape that's on the record. That's what was represented to the district judge. That is part of the excerpt of record. Whose statement is that? That was the government statement based on what we asked for the Border Patrol agent to get. If it's material, why shouldn't we say, go back, let them listen to the tape, the tape they should have gotten to begin with, and then let them make whatever motion he wants to make? Maybe he'll win, maybe he'll lose. But I don't understand why that isn't the way we should proceed if it's material. One, you know that I think legally that they did not meet the requirements for materiality. Okay. But I say assuming it is material, then what? Assuming it is material, Your Honor, because there is no – this judge listening to what has been presented to the court – Which is your paraphrase of the tape. No. It's an exact transcript of the tape, Your Honor. That's it. That's an exact transcript of – what they want is this particular witness's comments at the time that he called in. You gave the judge a complete transcription of the tape? The judge did not want it. He rejected that offer. He did not want to know what was on the tape. Okay. But he's the one who's entitled to it, not the judge. I gave the defense a complete transcript of the call by that particular witness of the first observation. That is what they asked for, and that is what they wanted, because that was what they thought was going to be material to their official restraint defense. I gave them an exact transcript of that. Why wouldn't you just give them all the tapes, if there were more than what they asked for, that fit their Rule 16 request that they made right after they got the case? Let them listen. Let them figure out. I mean, one of the values of the adversary system is that the lawyer for the defendant sees and hears things that the lawyer for the prosecution doesn't realize are salient. There's 90 minutes of excerpt. There's 90 minutes of other dispatch calls that have absolutely nothing to do with this particular case. Oh, so there's immaterial stuff on the same tape. Right. It's 90 dispatch calls from a bunch of others about a fire, a woman having a baby, a media. Okay. But it's not you're not the one who has to sit here and listen to it. Somebody's going to have to listen to it, and so that's what the government did at the court's request. We listened to it and turned over to the defense exactly what the court asked us to  Is there something secret on there? No, of course not, Your Honor. There's nothing secret about it. It's just that it's not material. Well, there could be something secret, like, oh, we're looking for the al Qaeda guy that we heard is going to be coming across the border. And if so, you'd be entitled to protection. But if there was anything relevant to this particular witness's testimony, meaning any statements relevant to this witness as asked for, it would have been either turned over by me to this particular defendant, or if I thought it was secret and had to be protected, I would have gone to the court with it. But I complied with the court's request and order to the T. So you're just protecting defense counsel from having to listen to boring stuff about somebody having a baby? Well, they're not entitled to things that are not material. And there's nothing about the dispatch calls that have nothing to do with this particular arrest that could even conceivably be considered relevant to any issue. You gave him – I want to make sure I'm clear on the facts. You gave him, after the trial, a full transcript of the tape? No. I gave him, Your Honor, a full transcript of the dispatch call related to the testifying witness about the first observation of the defendant. Is that the one or two line thing that's in the email? That's the three lines. That is it. There's 107 calls, Your Honor, on that dispatch tape in the hour-and-a-half period that's covered. 107 dispatch calls. Most of them are pure gibberish. 1410 at 2, 10-4. 120 at 11, 10-4. Those are the nature of the dispatch calls, which is why they're not janks. There's some calls that have some actual language, some cognizable language in it about a fire, about a woman having a baby, and about this particular call. Well, janks doesn't even matter. It's just Rule 16. You're right, Your Honor. But the reason why I only mention it is because it also played into the judge's analysis of materiality as well with this particular case. But that is the nature of these calls, Your Honor. And that is why they were not as – they were not considered by the Court to be material. And even if you decide that the judge was wrong and abused his discretion, there's no prejudice here. The excerpt is replete with the judge's findings that this particular witness was credible, was not challenged on cross-examination. I see you. And with that, Your Honor, the government submits. Thank you, Ms. Perez. Mr. Bershnev, you actually used up your time. If you want to take a minute, because we went over with Ms. Perez. Keep it to a minute, if you would. Yes. I'll try and do it in even less time. Just one quick record point that I think is crucial to be made. The initial – Agent Woodford says he calls right when he sees them. That's according to his report at ER2 at 510. The excerpt few lines that Your Honor noted from the government is at 521. We think that there's certainly the possibility – and it doesn't mention backup. Woodford says, I called for backup right when I saw them. We think there is a genuine possibility, not alleging bad faith, a genuine possibility of another call that would be more relevant. So tell me in 25 words or less, what would you have us order? Remand for what? Remand with an order to produce the tapes, to allow the defendant to make appropriate motions, and if there is no cause for a new trial, to reinstate the judgment. That's, I think, less than 25, Your Honor. You did. Thanks much. Thank you, Mr. Perez. The case has just started. You just submitted it.
judges: Goodwin, Kleinfeld, Silverman